IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JIMMY L. YOUNG,

      Plaintiff,

v.                                                            Case 2:12-cv-02493-JDT-cgc

CITY OF MEMPHIS, TENNESSEE;
LOUIS J. MONTESI, JR.;
OFFICER M. TATE;
and, JOHN AND JANE DOES 1-20;

      Defendants.

---

**REPORT AND RECOMMENDATION ON IN FORMA PAUPERIS SCREENING
PURSUANT TO 28 U.S.C. § 1915 AND ON CERTIFICATION OF APPEALABILITY
PURSUANT TO RULE 24 OF THE FEDERAL RULES OF APPELLATE PROCEDURE**

---

Before the Court is Plaintiff Jimmy L. Young's pro se Complaint (Docket Entry "D.E." #1), which must be screened pursuant to 28 U.S.C. § 1915 ("Section 1915") as Plaintiff is proceeding in forma pauperis. (D.E. #3). The instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #4). For the reasons set forth herein, it is recommended that Plaintiff's Complaint be DISMISSED pursuant to Section 1915 for failure to state a claim upon which relief may be granted and that leave to proceed in forma pauperis on appeal be DENIED pursuant to Rule 24 of the Federal Rules of Appellate Procedure.

**I. Background**

On June 22, 2012, Plaintiff filed a pro se Complaint against the City of Memphis, Tennessee (the "City"), Louis J. Montesi, Jr. ("Montesi") and Officer M. Tate ("Officer Tate"). Plaintiff

1

identifies Montesi as a "duly elected official" and "magistrate" and Officer Tate as a police officer for the City. (*Id.* ¶¶ 3, 5). Plaintiff alleges that, on or about April 2, 2012 at 16:13 hours, he was arrested by Officer Tate for driving while license suspended/revoked/cancelled pursuant to Tennessee Code Annotated Section 55-50-504, for unlawful carrying or possession of a weapon,[1] and for a violation of the financial responsibility laws pursuant to Tennessee Code Annotated Section 55-12-139. (Compl. ¶ 6). Plaintiff alleges that Officer Tate "unlawfully searched" his vehicle without his "consent or permission" and "unlawfully towed" his vehicle to "the city lot." (*Id.* ¶ 7).

Plaintiff alleges that, also on about April 2, 2012, Officer Tate "swore a Fraudulent Affidavit" in support of his arrest that stated that he did not have a valid gun permit. (*Id.* ¶ 8). Plaintiff summarily states as follows with respect to this claim: "Plaintiff does not need nor is he required to have permission (a gun permit) to carry a gun. Plaintiff is a living, breathing, sentient being on the soil, a Natural Person, and therefore is not and cannot be an ARTIFICIAL PERSON and therefore, is exempt from any and all identifications, treatment, and requirements as any ARTIFICIAL PERSON pursuant to any process, law, code, or statute or any color thereof. (Bill of Rights) Amendment II : The RIGHT of the people to keep and bear arms, Shall not be infringed." (*Id.* ¶ 9).

Plaintiff alleges that the affidavit also fraudulently alleges that he "could not prove proof of insurance." (*Id.* ¶ 10). Plaintiff states as follows with respect to this allegation: "Plaintiff as the

---

[1] Plaintiff's Complaint states that his arrest for unlawful carrying or possession of a weapon was pursuant to Tennessee Code Annotated Section 55-12-139; however, this is the financial responsibility statute. Thus, it is not entirely clear to the Court what weapon-related offense Plaintiff was charged with upon arrest.

united States Constitution has the unlimited capacity to contract without his informed consent" and "Plaintiff further noticed that pursuant to said Constitution, Plaintiff cannot be compelled, manipulated, extorted, tricked, threatened, placed under duress, or coerced, or so effected by any NATURAL PERSON, who individually, or in any capacity as or under any ARTIFICIAL PERSON, agency, entity, officer, or party, into the waiving of any of plaintiff's Rights, or to act in contradiction thereof, or to act in opposite of the moral conscience and dominion granted Plaintiff by God; nor can plaintiff be deprived of any of these Rights, privileges, and immunities, except by lawful process in accordance with said Constitution, without that Natural and/or ARTIFICIAL PERSON, in whatever capacity, in so doing causing injury to the Plaintiff and thereby committing numerous crimes, requiring lawful punishment thereof." (*Id*. ¶¶ 10-11).

Plaintiff alleges three federal causes of action. (*Id*. ¶¶ 18-23). First, Plaintiff alleges that the City "maintains a pattern and practice of depriving liberty and property, and causing damage without probable cause or proper foundation as secured by the Constitution as demonstrated by the deprivation of Plaintiff'[s] rights." (*Id*. ¶ 19).

Second, Plaintiff alleges that the City "failed and/or neglected to properly train and supervise its employees, and especially its police officers and municipal judges, with respect to individual rights as protected by the Constitution as made evidence by the several severe abuse(s) and damage(s) sustained by Plaintiff." (*Id*. ¶ 20).

Third, Plaintiff alleges that "all defendants . . . were acting within the scope of their presumed duties as employees of Defendant City when depriving Plaintiff of his rights, liberty, and freedom from unprovoked attacks, unlawful arrest, denial of effective assistance of counsel, and medical treatment, and other violations of clearly established laws protected by the 4th, 5th, 7th, and

3

14th amendments." (*Id*. ¶ 21). Plaintiff alleges that he has "been forced to suffer physical and emotional cruel and unusual punishment, in direct violation of the Eighth Amendment, by combined unreasonable actions of Defendants John Does as shown above and it is unreasonable that any jailor would not have known that to physically torture a prisoner by not allowing him to sleep, shower, receive reasonable allocations of sufficient food, or receive medical treatment, would be a violation of his rights." (*Id*. ¶ 22). Plaintiff alleges that the City is liable under the doctrine of *respondeat superior* "for the acts of their employees committed within the scope of their employee duties, but outside the scope of their discretion in a long train of abuses which is a custom, policy, or practice to violate clearly established law." (*Id*. ¶ 23).[2]

Plaintiff alleges that all Defendants "acted wantonly, recklessly, wilfully, and maliciously . . . showing a deliberate indifference towards Plaintiff and Plaintiff['s] rights . . . with the direct intent and sole purpose of injuring, humiliating, vexing, oppressing, and causing mental anguish to Plaintiff." Plaintiff requests $850,000.00 in compensatory damages, $850,000.00 in punitive damages, all "costs and disbursements of this action," and "all attorney's fees incurred in prosecuting this action pursuant to 42 U.S.C. [§] 1988."

## II. Section 1915 Screening

Pursuant to Section 1915, in proceedings in forma pauperis, notwithstanding any filing fee, or any portion thereof, that may have been paid, the Court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue or that the action or appeal is frivolous or

---

[2] In addition to his stated causes of action, Plaintiff's Complaint generally references violations of the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendments (*Id*. at 2); violations of 42 U.S.C. Sections 1983, 1985, 1986, and 1988 (*Id*. ¶ 1); and, wrongful arrest, grand theft, criminal trespass, wrongful detention, criminal conspiracy, and criminal treason (*Id*. at 1-2).

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

### A. *Count I—Pattern or Practice of Depriving Liberty and Property*

Plaintiff's first cause of action is directed solely at the City for maintaining a "pattern and practice" of depriving liberty and property. (Compl. ¶ 19). Plaintiff does not expressly state the legal basis for this claim; however, it appears that he intends for this to be a claim for a violation of 42 U.S.C. § 1983 ("Section 1983"), which he summarily references in his Complaint. (*Id.* ¶ 1). One requirement to allege a violation of Section 1983 is to allege that "a municipal policy or practice existed which caused the violation of his constitutional rights." *Page v. City of Monroe*, 24 Fed.

5

Appx. 249, 251 (6th Cir. 2001) (citing *Monell v. Dep't of Social Srvs. of City of New York*, 436 U.S. 658, 690-95 (1978) (recognizing that the "touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution"). Plaintiff's Complaint fails to allege any policy of the City that deprives citizens of liberty and property. In fact, Plaintiff's Complaint does not reference any policy of the City whatsoever. Accordingly, it is recommended that Count 1 of Plaintiff's Complaint fails to state a claim upon which relief may be granted and that it should be dismissed pursuant to Section 1915.

### B. Count II—Negligent Training and Supervision

Plaintiff's second cause of action is directed solely against the City and alleges that it "failed and/or neglected to properly train and supervise its employees, and especially its police officers and municipal judges." (Compl. ¶ 20). Plaintiff does not expressly state the legal basis for this claim; however, it appears that he intends for this to be a claim for a violation of Section 1983. (*Id.* ¶ 1). "A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that a municipality's policy or custom caused the alleged injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School* Dist., 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 690-91). "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis*, 455 F.3d at 700 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis*, 455 F.3d at 700 (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

As with Count I of Plaintiff's Complaint, Count II does not allege any policy or custom that caused the alleged injury, nor does the entirety of Plaintiff's Complaint reference any such policy or custom. Plaintiff does not allege what training or supervision was inadequate for the tasks performed, nor does he allege how the inadequacy was closely related to or caused his injury. Instead, Plaintiff only alleges that the City's negligent failure to train and supervise is "made evident by the several and severe abuse(s) and damage(s) sustained by Plaintiff." (Compl. ¶ 20). A conclusory allegation that Plaintiff suffered damages is not sufficient to state a Section 1983 claim for failure to train or supervise. Accordingly, it is recommended that Count II of Plaintiff's Complaint fails to state a claim upon which relief may be granted and that Count II of Plaintiff's Complaint be dismissed pursuant to Section 1915.

### C. Count III

Plaintiff's third cause of action is directed at the City, Montesi, Officer Tate, and "Defendants John Does." (Compl. ¶¶ 21-23). It alleges that Plaintiff was deprived of his rights under the Fourth, Fifth, Seventh, Eighth and Fourteenth Amendments to the United States Constitution and that the City is liable under the doctrine of respondeat superior due to their "custom, policy, or practice to violate clearly established law." (*Id.*) It appears to the Court that Count III also attempts to raise a cause of action under Section 1983, as Section 1983 is the vehicle to "redress injury suffered by individuals whose constitutional or legal rights have been violated by officials acting under color of law." *See, e.g.*, *Lomaz v. Hennosy*, 151 F.3d 493, 500 (6th Cir. 1998).

As to the allegations against the City, like Counts I and II, Plaintiff has not alleged any custom, policy, or practice of the City that he claims resulted in violations of his constitutional rights. Absent pleading that such a policy exists, it is recommended that Plaintiff has failed to state

a claim against the City under Section 1983.

As to the allegations against "Defendants John Does," Plaintiff only conclusorily and hypothetically asserts that "it is unreasonable that any jailor would not have known that to physically torture a prisoner by not allowing him to sleep, shower, receive reasonable allocations of sufficient food, or receive medical treatment" would be a violation of the Eighth Amendment of the United States Constitution. (Compl. ¶ 22). However, Plaintiff has not plead any facts whatsoever regarding alleged mistreatment while incarcerated. Such threadbare assertions and conclusory statements do not satisfy the pleading requirements. Accordingly, it is recommended that Plaintiff has failed to state a claim against "Defendants John Does" under Section 1983.

As to the allegations against Montesi, Plaintiff's Complaint does not allege any facts whatsoever relating to him. Other than identifying Montesi as a "duly elected official" and a "magistrate," his Complaint does not substantiate Montesi's role in any alleged wrongdoing. Absent any factual support whatsoever for Plaintiff's Section 1983 claim against Montesi, it is recommended that Plaintiff has failed to state a claim against Montesi under Section 1983.

As to the allegations against Officer Tate, Plaintiff's Complaint alleges that his constitutional rights were violated by an unlawful search and unlawful towing of his vehicle. (Compl. ¶¶ 6-7). However, Plaintiff provides that he was arrested pursuant to three Tennessee statutes for driving while his license was suspended/revoked/cancelled, unlawfully carrying or possessing a weapon, and violations of the financial responsibility laws and that his vehicle was subsequently impounded after his arrest. (*Id.* ¶ 6). While the Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue but upon

probable cause," U.S. Const. amend. IV, it is well-settled that "inventory searches are now a well-defined exception to the warrant requirement," *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). As neither a warrant nor probable cause is required to conduct an inventory search of an impounded automobile, such a search may not give rise to any claim for relief under Section 1983. *See, e.g.*, *Schilling v. Swick*, 868 F. Supp. 904 (W.D.Mich. 1994).

Plaintiff additionally alleges that Officer Tate's affidavit sworn in support of his arrest was fraudulent because he was not required to have a valid gun permit and because, for reasons that are not clear to the Court, Plaintiff alleges that he was not required to establish proof of insurance. (Compl. ¶¶ 8-11). Although Plaintiff does not further allege the legal bases for these challenges, it appears he claims that they constituted an unlawful arrest in violation of the Fourth Amendment that he seeks to redress under Section 1983.

With respect to Plaintiff's arrest for unlawful carrying or possession of a weapon, as stated above, *see*, *supra*, n.1, Plaintiff has not provided the statutory basis for this arrest. Tennessee Code Annotated Section 39-17-1351 governs the requirements of a "handgun carry permit" as well as the procedures for obtaining it. Tenn. Code Ann. § 39-17-1351. Tennessee Code Annotated Section 39-17-1351 further provides that the "citizens of this state have a right to keep and bear arms for their common defense" but that the "general assembly has the power, by law, to regulate the wearing of arms to prevent crime." *Id.* Tennessee Code Annotated Section 39-17-1307 provides that it is an offense to carry a firearm "with the intent to go armed." Tenn. Code Ann. § 39-17-1307. Only a person with a valid handgun carry permit may "transport and store a firearm . . . in the permit holder's privately owned motor vehicle . . . ." Tenn. Code. Ann. § 39-17-1313. Accordingly, as Tennessee law does require a handgun carry permit, as Plaintiff was charged with a violation of

9

Tennessee law for a weapon-related offense, as Plaintiff was lawfully arrested due to this and other violations, it is recommended that Plaintiff has failed to state a claim upon which relief may be granted.

With respect to Plaintiff's arrest for violation of the financial responsibility laws, Tennessee Code Annotated Section 55-12-139 requires that, "[a]t the time the driver of a motor vehicle" is charged with certain violations, "the officer shall request evidence of financial responsibility as required by this section." Tenn. Code Ann. § 55-12-139(b). The statute sets forth what is required to evidence financial responsibility and the offense of failure to provide such evidence. Tenn. Code Ann. § 55-12-139(b)-(c). Plaintiff's Complaint admits that he was charged with a violation of this statute. Accordingly, as Plaintiff was charged with a violation of this law, as Plaintiff was lawfully arrested due to this and other violations, and it is entirely unclear what challenges Plaintiff attempts to raise regarding this charge, it is recommended that Plaintiff has failed to state a claim upon which relief may be granted. Further, as it is recommended that Plaintiff's challenges as to his arrest for unlawful carrying or possession of a weapon and violation of the financial responsibility laws both fail to state a claim upon which relief may be granted, it is recommended that Plaintiff has failed to state any claim upon which relief may be granted against Officer Tate.

In conclusion, it is recommended that Plaintiff's Complaint has failed to state any claim upon which relief may be granted against the City, Montesi, Officer Tate, or "Defendants John and Jane Does." Thus, it is recommended that Plaintiff's Complaint be dismissed in its entirety pursuant to Section 1915.

### III. Certification of Appealability

Upon the recommendation that Plaintiff's Complaint be dismissed pursuant to Section 1915,

the Court must further consider whether it should be recommended that Plaintiff be allowed to appeal this decision in forma pauperis, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Rule 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party has been permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies the pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* It would be inconsistent for the district court does not warrant service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).

The same considerations that lead to the recommendation that the District Court dismiss the complaint in this case for failure to state a claim upon which relief may be granted also compel the recommendation that an appeal would not be taken in good faith. Accordingly, it is recommended that the District Court certify pursuant to Rule 24(a) of the Federal Rules of Civil Procedure that any appeal in this matter by Plaintiff is not taken in good faith and that leave to proceed in forma pauperis on appeal be DENIED. It is further recommended that, if Plaintiff files a notice of appeal, he must pay the $455 appellate filing fee in full or file a motion to proceed in forma pauperis in the

United States Court of Appeals for the Sixth Circuit within thirty (30) days.

**DATED** this 18th day of September, 2013.

            s/ Charmiane G. Claxton
            CHARMIANE G. CLAXTON
            UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**